UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERTO GARCIA, | ) | |
|     Plaintiff, | ) | No.  07 C 6138 |
| | ) | |
|     vs. | ) | |
| | ) | Judge Aspen |
| CITY OF CHICAGO, et. al., | ) | Magistrate Judge Denlow |
|     Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'**
**MOTIONS TO STAY PROCEEDINGS**

Plaintiff, through counsel, Law Offices of Lawrence V. Jackowiak, responds to Defendants' motion to stay as follows:

There are nine individual Defendant police officer Defendants in this case, plus the City of Chicago. The nine individual Defendants are former members of the now-defunct Special Operations Section (SOS) of the Chicago Police Department. The SOS unit was disbanded after seven of its officers were indicted for using their badges and guns to operate a robbery ring and terrorizing people for years. The incident in the present complaint is the basis for some of the criminal charges.

Numerous cases have been filed against SOS officers resulting from the type of conduct which led to the criminal charges. Some cases have settled, but many are still pending. Undersigned counsel has six other pending cases against SOS officers. Counsel for the Defendants have consistently moved for stays in the SOS cases. Undersigned counsel, has six other SOS cases pending in this court. In three of the cases a stay was denied, a stay was ordered in two others, and in the other case a stay motion is now being litigated.

In Cook v. City of Chicago, 06 C 5930, Judge Gettleman *denied* a stay. In Garcia v. City of Chicago, 06 C 4340, Judge Shadur *denied* a stay, and ordered discovery to proceed with a protective order. In Blakey v. City of Chicago, 07 C 1880, Judge Darrah *denied* a stay, and ordered discovery to proceed with a protective order.

In Castro v. City of Chicago, 07 C 931, Judge Kendall *granted* a stay. In Guttierez v. City of Chicago, 06 C 4338, Judge Norgle *granted* a stay. Finally, Wisniewski v. City of Chicago, 07 C 6775, which is also before Judge Norgle, a motion for stay is currently being litigated.

1

Of the nine individual Defendants in this case, four were criminally charged for their role in the incident, five were not. Presently, all five of the un-charged Defendants have filed a separate motion for a stay. In addition, Defendant Margaret Hopkins has also filed a motion for a stay. Defendants Villareal, Finnigan, and Herrera have not filed a motion for a stay.

Plaintiff submits that especially the uncharged Defendants do not have any basis to seek a stay – as they are not parties in the criminal case. In addition, as explained more fully below, even the criminally charged Defendants do not have a sufficient basis to be granted a stay.

**Introduction**

The individual Defendants are police officers who worked in the Chicago Police Department Special Operations Section (SOS). The incident alleged by Plaintiff was part of a pattern and practice of gross abuse of power by SOS officers, who essentially ran a robbery ring which entailed illegally entering and searching homes; illegally searching persons and vehicles; making false arrests; stealing narcotics, jewelry, weapons, money (hundreds of thousands of dollars) and other valuables; planting drugs on innocent people; as well as physical abuse, intimidation, and threats.

After an alleged internal investigation that suspiciously took several years (which allowed the rogue police officers to remain on the street and continue their reign of terror), finally on September 8, 2006, four Special Operations Section officers were arrested and charged: JEROME FINNIGAN, KEITH HERRERA (Defendants herein), as well as Thomas Sherry and Carl Suchocki. These officers were charged with a long list of felonies, including, *inter alia*, multiple counts of home invasion, armed violence, aggravated kidnaping, narcotics delivery, burglary, and official misconduct. The charged conduct took place from 2002 to 2005, and involved about 14 different incidents. Following the arrests, bond for Defendant JEROME FINNIGAN was set at $3,000,000.00, bond for Defendant KEITH HERRERA was set at $3,000,000.00, bond for Thomas Sherry was set at $2,000,000.00, and bond for Defendant Carl Suchocki was set at $1,500,000.00.

After the initial charges, the investigation continued. Numerous civilian-victims, and more than a dozen police officers, testified before the Cook County grand jury and implicated Special Operations Section officers for the conduct described above. These police officers undoubtedly feared that they also would be prosecuted, and broke the sacred CPD code of silence.

On or about December 4, 2006, a second round of charges led to the arrest of three additional Chicago police officers from the SOS unit: FRANK VILLAREAL, MARGARET HOPKINS (Defendants herein), and James McGovern. In addition, even more charges were filed against JEROME FINNIGAN, KEITH HERRERA, Thomas Sherry and Carl Suchocki. The second round of charges were similar to the first, and included, *inter alia*, multiple counts of home invasion, armed violence, aggravated kidnaping, narcotics delivery, burglary, and official misconduct.

**The Instant Motions to Stay**

The gist of Defendants argument is that a stay should be entered based on the "potential" for self incrimination. As explained below, the Defendants' argument fail for several reasons.

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any *criminal case* to be a witness against himself." (U.S. Const., amend. V.) But this is *not* a criminal case. Moreover, it is beyond dispute that the Constitution does *not* require a stay of civil proceedings pending the outcome of parallel criminal proceedings. E.g., Keating v. Office of Thrift Supervision, 45 F.3d 322, 324 (9th Cir. 1995).

In Nowaczyk v. Matingas, 146 F.R.D. 169, 174 (N.D.Ill. 1993), this Court denied a motion for a stay, recognizing that: "A stay of civil discovery is *sometimes* appropriate to protect competing interests arising from parallel civil and criminal proceedings involving the same subject matter." (Id. (emphasis added).) See also, e.g., People ex rel. Hartigan v. Kafka & Sons Building & Supply Co., 252 Ill.App.3d 115, 119, 192 Ill.Dec. 56, 625 N.E.2d 16, 19 (1993) ("Where a criminal action is simultaneously pending with a civil action, courts *may* stay the civil proceeding based on the fifth amendment until the resolution of the criminal matter" (emphasis added)).

Here, the Defendants predictably assert that "potential" for self-incrimination could cause a burden. However, it is well recognized that the possibility of self-incrimination or invocation of the Fifth Amendment does not mandate a stay. As the Ninth Circuit stated in Keating:

> "A defendant has *no* absolute right *not* to be forced to choose between testifying in a civil matter and asserting his fifth amendment privilege. Not only is it permissible to conduct a civil proceeding at the same time as a related criminal proceeding, even if that necessitates invocation of the fifth amendment privilege, but it is even permissible for the trier of fact to draw adverse inferences from the invocation of the fifth amendment in a civil proceeding."

Keating, 45 F.3d at 326 (emphasis added), citing Baxter v. Palmigiano, 425 U.S. 308, 318, 96

S.Ct. 1551, 1558, 47 L.Ed.2d 810, 821 (1976) [1]

Similarly, in International Business Machines Corp. v. Brown, 857 F.Supp. 1384 (C.D.Cal. 1994), the court discussed the difficult decision that must be made by a party facing simultaneous or successive civil and criminal trials:

> "[T]he contention that being forced to choose between the compulsion to testify in a civil suit in order to avoid an adverse result on the merits undermines the right to remain silent in a criminal matter, while having surface appeal, will not stand analysis. While the choice between testifying or invoking the fifth amendment may be difficult, it does not create the basis for a stay."

(Id. at 1389 (citations omitted).)

Notwithstanding the fact that no direct Fifth Amendment violation results from a trial court's refusal to stay civil proceedings, courts have enunciated several factors to be considered when determining whether to stay civil proceedings. See Nowaczyk, 146 F.R.D. at 174. Cruz v. County of DuPage, 1997 WL 370194 (N.D.Ill. 1997), Doe v. City of Chicago, 360 F.Supp.2d 880, 881 (N.D.Ill. 2005); Keating, 45 F.3d at 324-25.

These factors are:

(1) Whether the two actions involve the same subject matter;

(2) Whether the two actions are brought by the government;

(3) The posture of the criminal proceeding;

(4) The Plaintiff's interests and possible prejudice to the Plaintiff;

(5) The burden that may be imposed on the Defendant; and

(6) The public interests at stake

(Id.)

Plaintiff will address each factor in turn below.

**Whether the Two Actions Involve the Same Subject Matter.**

The two actions do involve the same subject matter.

---

[1] See also Securities & Exchange Comm'n v. Incendy, 936 F.Supp. 952, 956 (S.D.Fla. 1996) (noting that the Constitution is not violated by forcing an individual to risk "non-criminal disadvantage" by remaining silent in civil proceedings out of fear that he will incriminate himself in a subsequent criminal action).

**Whether the Two Actions Are Brought by the Government**

The judicial concern is that the government may try to take advantage of the broader rules of civil discovery to obtain information for a criminal prosecution. See, e.g., S.E.C. v. Dresser Industries, Inc. 628 F.2d 1368, 1376 (D.C. Cir. 1980); Afro-Lecon v. United States, 820 F.2d 1198, 1203 (Fed. Cir. 1987). Here, the two actions are not brought by the government. Thus, this factor also weighs against a stay.

**The Posture of the Criminal Proceeding**

The criminal proceeding in state court has been pending for over one year. But, as is typical in state court, very little has happened. Now there are swirling rumors that the United States Attorney's Office is also going to bring charges against the SOS officers. If that happens, the resolution of the cases will likely take several years. Moreover, if the Defendant police officers go to trial and are found guilty, as is likely given the strong evidence of guilt (there are dozens of eye-witnesses including many police officers), the Defendants Fifth Amendment privilege would attach through numerous appeals, and possible remands and re-trials. Because there is currently no end in sight, and the criminal proceedings will likely take years to complete, this factor weighs heavily against a stay.

**The Plaintiff's Interests and Possible Prejudice to the Plaintiff**

Plaintiff will be prejudiced in numerous ways if a blanket stay is granted.

This is a civil cause of action where Plaintiff seeks money damages. In the pending criminal case, it was alleged that Defendants JEROME FINNIGAN and KEITH HERRERA were leaders of a police robbery-ring that stole hundreds of thousands of dollars in United States currency, narcotics, jewelry and other valuables.

If a stay is granted until the conclusion of the criminal proceedings, there is obviously a real danger that the Defendants assets will not be available to pay any judgment in this case that they would be responsible for. If this happens, Plaintiff will be prejudiced immensely as it will be impossible for the him to fully recover his awarded damages and be made whole. [2]

---

[2] At the initial bond hearing in the criminal case, it was alleged that JEROME FINNIGAN does not have a single checking account at any financial institution, and that all his household expenses, including two home mortgages, two car payments, were paid with cash or money orders. Also, Defendant JEROME FINNIGAN currently has $400,000.00 posted for bond, and Defendant KEITH HERRERA has posted $375,000.00 in bond money.

Finally, it is clearly in Plaintiff's interests to *not* have this case delayed for years. A stay raises issues concerning witness relocation, fading memories, as well as destruction and loss of evidence. For example, it is Chicago Police Department policy to destroy OPS complaints after five years. In this case, it is alleged that the pattern of SOS abuse began in 2002. Therefore, a stay could mean the destruction of these records, and others, and prevent Plaintiff from discovering other facts relevant to his claims.

And with regards to Plaintiff's substantive claim and Monell claim, there are numerous witnesses, many of whom have given statements to state and federal investigators and have testified before the grand jury. Why should they not also be available to Plaintiff for a deposition now while the events are fresh in their memories?

In sum, a stay would make financial recovery less likely, and would raise issues about lost or destroyed evidence, memory loss, witness relocation, etc. Therefore, this factor – the Plaintiff's interests and possible prejudice to the Plaintiff – weighs *overwhelmingly* against a stay. See also, Jacksonville Saving Bank v. Kovack, 326 Ill.App.3d 1131, 1136, 261 Ill.Dec. 211, 215, 762 N.E.2d 1138,1142 (2002), (court affirms denial of stay, finding: "It would be perverse if plaintiffs who claim to be the victims of criminal activity were relegated to receive slower justice than other plaintiffs simply because the behavior they allege is egregious enough to attract the attention of criminal authorities.")

**The Burden That May Be Imposed on the Defendant**

In their present motions, other than a barren, recurrent rant about self-incrimination, the Defendants do not articulate any specific burden that would be imposed on them by proceeding with discovery. Notably, if the Defendants did assert their Fifth Amendment privilege in the present case, that will not prohibit them from presenting a vigorous defense through cross-examination and other means available to them. Indeed, at a minimum, they will be able to present essentially the same defense they present in the pending criminal cases.

Also, there is much discovery being requested, produced, and received by the Defendants in the pending criminal case without causing Defendants a burden or to incriminate themselves. There is no reason why this same discovery could not also be produced in the instant civil case.

Also, Defendants do not have to take the fifth amendment in this case. They can choose, if they so, wish to tell the truth and/or answer the questions. Instead, they now choose to hide

6

behind their potential to take the fifth to try to delay justice for Plaintiff.

Moreover, it is beyond dispute that it is *not* unconstitutional to force the Defendants to choose between waiving their Fifth Amendment privilege, or asserting the Fifth Amendment and have negative inferences drawn from their silence. See Baxter, 425 U.S. at 318; Harris v. City of Chicago, 266 F.3d 750, 753 (7th Cir. 2001); Am. Express Bus. Fin. Corp. v. R W Prof'l Leasing Servs. Corp., 225 F.Supp.2d 263, 265 (E.D.N.Y. 2002).

There is no certainty that not staying these proceedings would be any burden on the Defendants, and their rhetoric that it would be is mere speculation. This factor all by itself should not be sufficient to grant a stay. See Federal Savings & Loan Insurance Corp. v. Molinaro, 889 F.2d 899, 902-03 (9th Cir. 1989) (court finds that while a party's Fifth Amendment rights are a significant factor in deciding a stay, "it is only one consideration to be weighed against others.").[3]

**The Public Interest**

In her motion, Defendant HOPKINS argues that:
"In light of the currently ongoing criminal proceedings against Hopkins as well as the fact that the nature of this litigation has been reported in various media outlets, it is highly unlikely that she would engage in any criminal wrongdoing. Moreover she is no longer a police officer."(Def Hopkins' Motion at p. 3).

Counsel's assertions are belied by the facts. At the initial bond hearing in the criminal case, it was alleged that after JEROME FINNIGAN became aware of the criminal investigation, he communicated with a witness to attempt to get her to lie, and even told her that if she did not lie for him, he would go to prison. Then, after he was released on bond, it has been alleged by the Cook County State's Attorney's Office that FINNIGAN sought out information trying to learn

---

[3] Similarly, in Giampa v.Illinois Civil Service Commission, 89 Ill.App.3d 606, 44 Ill.Dec. 744, 411 N.E.2d 1110 (1980), the court concluded that forcing a Plaintiff to testify in a civil proceeding when there were pending criminal charges did not violate his right to be free from self-incrimination. The court reasoned:

> "The constitutional guarantee against self-incrimination protects a witness from being forced to give testimony leading to the imposition of criminal penalties, but it does not insulate a witness from every possible detriment resulting from his testimony. There is nothing inherently repugnant to due process in requiring plaintiff to choose between giving testimony at the [civil proceeding] and keeping silent, even though giving testimony at the hearing may damage his criminal case." (Giampa, 89 Ill.App.3d at 613, 44 Ill.Dec. 744, 411 N.E.2d 1110.)

which prosecutors were was working on his case, and then made threats against a female prosecutor handling the case.

At the second bond hearing, the State's Attorney's Office alleged that after KEITH HERRERA was released on bond for the initial charges, he too intimidated and attempted to tamper with a witness. The prosecution explained that while HERRERA was at a nightclub in the 13th district, he approached one of his victims and followed him into a restroom where he confronted the person about the criminal charges and made veiled threats. The next day, HERRERA falsely reported to the police in the 8th district (where he once worked) that he was a victim of an assault at the nightclub in the 13th district.

More recently, on September 26, 2007, Defendant FINNIGAN was arrested by FBI agents on federal charges of murder-for-hire. FINNIGAN was recorded planning the murder of a fellow SOS officer who FINNIGAN thought was working with the government and was going to be a witness against him in the pending criminal case. FINNIGAN was also recorded discussing the murder of three other police officers who he feared were cooperating and would testify against him.

Clearly, HOPKINS' present assertion that it is "highly unlikely" that she would engage in any criminal wrongdoing can be soundly rejected given the SOS officers history of wrongdoing since the criminal charges were filed.

In addition, with regard to the public interest, it has been repeatedly recognized that the interests of nonparties and the public favor prompt resolution of civil proceedings. E.g., Jacksonville, 326 Ill. App 3d at 1137, 261 Ill.Dec. at 216, 762 N.E.2d at 1143; Sterling National Bank v. A-1 Hotels International, Inc., 175 F.Supp.2d 573, 580 (S.D.N.Y. 2001). See also, Nowaczyk, 146 F.R.D. at 175 (recognizing that "the Court has an interest in moving the cases on its docket to an expeditious conclusion."). Here, the resolution of the criminal cases is likely years away.

In sum, the public interest factor also weighs against a stay.

**A Stay Should Not Be Granted**

Whether to grant a stay is a discretionary issue for the Court. "A court may decide in its discretion to stay civil proceedings, postpone civil discovery, *or impose protective orders* and conditions when the interests of justice seem to require such action." Cruz, 1997 WL 370194 at *1 (emphasis added); Dresser, 628 F.2d at 1368; Afro-Lecon, 820 F.2d at 1202.

The Eighth Circuit has said that a court should *not* grant a stay because of Fifth Amendment concerns unless a defendant shows: "either that the two proceedings are so interrelated that he cannot protect himself at civil trial by selectively invoking his Fifth Amendment privilege, or that the two trials will so overlap that effective defense of both is impossible." Koester v. Am. Republic Invs., Inc., 11 F.3d 818, 823 (8th Cir. 1993) (citing Anglada v. Sprague, 822 F.2d 1035, 1036-37 (11th Cir. 1987)).

Similarly, the Seventh Circuit has recognized that: "a stay contemplates 'special circumstances' and the need to avoid 'substantial and irreparable prejudice.'" United States v. Certain Real Property, Commonly known as 6250 Ledge Road, Egg Harbor, WI, 943 F.2d 721, 729 (7th Cir. 1991) (quoting United States v. Little Al, 712 F.2d 133, 136 (5th Cir.1983)).

As demonstrated above, the totality of factors weigh against a stay. In contrast, Defendants offer nothing but rhetoric about self-incrimination. Courts have repeatedly held that this is not enough.

There is certainly a significant amount of discovery that could be done that would not raise Fifth Amendment issues, including discovery with the Defendant CITY. In addition, discovery received or produced in the criminal proceedings could be produced in the present civil case without imposing a burden. On these basis alone, discovery should be allowed to proceed. If this Honorable Court did consider granting a stay based on Defendants' Fifth Amendment concerns, rather than imposing a blanket stay, Plaintiff submits that this Court could impose a protective order that addresses those issues (which could perhaps only allow for depositions of criminally charged officers to be taken with leave of court after other discovery is completed). If at any point in discovery Defendants believe that they might incriminate themselves, they may assert their Fifth Amendment privilege, or seek a protective order. See also Nowaczyk 146 F.R.D. at 176 ("[E]ntry of a stay is not appropriate where ... the civil action is not mere subterfuge and alternative protections will suffice).

**The City of Chicago Is Not a Party to the Criminal Case**

This motion is only brought by the individual Defendant-Officers and not by Defendant CITY OF CHICAGO. Indeed, Defendant CITY OF CHICAGO is not a party to the criminal case, has no fifth amendment privileges, and would not be burdened at all from participating in discovery. None of the factors weigh towards a stay for the CITY. Thus, even if this Court were to grant a motion to stay or a protective order as to Defendant-Officers, it should not apply to the CITY.

## CONCLUSION

As would any Defendant accused of serious offenses in a civil lawsuit where the evidence of guilt is overwhelming, Defendants would love to *delay* these proceedings indefinitely, or at least for a couple of years. As noted earlier, parties who face contemporaneous civil litigation and criminal investigation face difficult choices. At the same time, parties who claim to have been victimized by misconduct and crimes of police officers are entitled to pursue their civil remedies in a timely fashion without prejudice. Police officers should not be given an *advantage* in a civil case, to the *detriment and prejudice* of Plaintiffs, simply because their conduct was so scandalous and corrupt that they are facing criminal charges. For all the above reasons, Plaintiff respectfully requests that Defendants' motion for a stay be denied.

Respectfully submitted,

/s/ Lawrence V. Jackowiak
*Counsel for the Plaintiff*

Lawrence V. Jackowiak
Law Offices of Lawrence V. Jackowiak
20 North Clark Street - Suite 1700
Chicago, Illinois 60602
(312) 795-9595